UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ERINN KNOX,

                         Plaintiff,

v.                                                      1:11-CV-0112
                                                        (GTS/CFH)

CNTY. OF ULSTER; ULSTER CNTY.
SHERIFF'S DEP'T; ULSTER CNTY DIST.
ATTORNEY'S OFFICE; DET./LT. RONALD
L. DREISER; DEP. SGT. WALLACE FULFORD;
DIST. ATTORNEY HOLLEY CARNRIGHT; and
ASST. DIST. ATTORNEY WILLIAM J.
WEISHAPUT,
                         Defendants.
_____

APPEARANCES:                              OF COUNSEL:

ERINN KNOX
 Plaintiff, *Pro Se*
160 Elmendorf Street
Kingston, NY 12401

ROEMER WALLENS GOLD & MINEAUX LLP   EARL T. REDDING, ESQ.
 Attorneys for Defendants
13 Columbia Circle
Albany, NY 12203

GLENN T. SUDDABY, United States District Judge

## <u>MEMORANDUM-DECISION and ORDER</u>

Currently before the Court, in this *pro se* civil rights action filed by Erinn Knox

("Plaintiff") against the seven above-captioned government entities and individuals

("Defendants"), is Defendants' motion to dismiss Plaintiff's Complaint for failure to state a

claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 9.) For the reasons set forth below,

Defendants' motion is granted in part and denied in part.

## I.      RELEVANT BACKGROUND

### A.      Plaintiff's Complaint

Plaintiff's Complaint asserts the following four claims against all Defendants: (1) malicious prosecution, (2) abuse of process, (3) denial of due process, and (4) slander.  The Complaint cites New York common law as well as federal civil rights statutory law as grounds for these claims.  (*See id.*, at ¶¶ 6,7.)  In addition, Plaintiff asserts a § 1983 claim for failure to train or supervise against defendant, County of Ulster ("the County").  (*See generally* Dkt. No. 1 [Pl.'s Compl].)[1]

Generally, in support of his claims, Plaintiff sets forth the following factual allegations in his Complaint, which are accepted by the Court as true for purposes of deciding the current motion.  Plaintiff, an African American corrections officer employed by defendant, Ulster County Sheriff's Department ("UCSD"), was escorting an inmate on July 26, 2009, when an incident occurred whereby the inmate was injured.  Thereafter, defendant, Detective Ronald L.

---

[1]      Although Plaintiff appears in this action *pro se*, he avers to submit his Complaint "by his attorney, David Brickman, Esq."  (Dkt. No. 1, at 1 [Compl.].)  Accordingly, the Court will not afford the allegations in the Complaint the special solicitude typically afforded to *pro se* pleadings.  *See Spira v. J.P. Morgan Chase & Co.*, 466 F. App'x 20, 22 (2d Cir. 2012).  Moreover, the Court strongly suspects that Plaintiff has also been aided by an attorney in the drafting of his papers opposing the current motion, which are organized, typewritten, and contain citations to dozens of instructive legal authorities in proper BlueBook format.  Further, the style of Plaintiff's memorandum of law mirrors that of his Complaint, which Plaintiff admits was submitted through his attorney.  Bearing in mind that the policy of liberally construing *pro se* submissions is to protect *pro se* litigants from inadvertent forfeiture of rights due to their lack of legal training, *see Iwachiw v. N.Y. City Bd. of Educ.*, No. 00-CV-2341, 2007 WL 433401, at *4 (E.D.N.Y. Feb. 5, 2007) (citing *Trisetman v. Federal Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir.2006)), where, as here, those submissions are "ghostwritten" by an attorney, such liberal construction may create unfairness toward the opposing party, *see* John C. Rothermich, "Ethical and Procedural Implications of 'Ghostwriting' for Pro Se Litigants: Toward Increased Access to Civil Justice," 67 *Fordham L. Rev*. 2687, 2697 (Apr. 1999).  Accordingly, the Court will not afford the arguments in Plaintiff's opposition memorandum of law the special solicitude afforded to arguments made by *pro se* litigants.

Dreiser ("Dreiser"), investigated Plaintiff's role in the incident, and subsequently reported the incident to defendant, District Attorney Holly Carnright ("Carnright"). Plaintiff was placed on restrictive duty from August 1 through 27, 2009, at which time he was placed on administrative leave. On September 9, 2009, Plaintiff was arrested and charged with assault in the third degree. Three days later, Plaintiff was served with disciplinary charges. Plaintiff was subsequently suspended without pay for thirty days, and thereafter placed on paid administrative leave. Eventually, Plaintiff was found not guilty on the assault charge after a four-day trial.

At some point, UCSD or its agent informed Plaintiff's part-time employers, the Towns of Shandaken and Woodstock, of false information regarding the alleged incident, as a result of which Plaintiff was fired from his employment with said Towns.

A Caucasian corrections officer at UCSD was treated differently than Plaintiff after being accused of striking an inmate, such that he was suspended without pay for thirty days, but was not arrested.

On January 1, 2010, New York State Police responded to a "road rage" incident, alleged by complaining witness, Odelle Gordon. Defendant, Deputy Sergeant Wallace Fulford ("Fulford") responded to the scene, upon learning that Plaintiff's name was involved in the incident. Although Mr. Gordon told investigators and Defendants from the Ulster County District Attorney's Office ("UCDAO") that Plaintiff was not the individual about whom he complained, Plaintiff was still charged with Criminal Mischief. Eventually, a bench trial was held, after which Plaintiff was found not guilty.

Familiarity with the remaining factual allegations supporting Plaintiff's claims is assumed in this Decision and Order, which is intended primarily for review by the parties. (*See generally* Dkt. No. 1.)

**B.** **Defendants' Motion**

Generally, in support of their motion to dismiss Plaintiff's Complaint for failure to state a

claim upon which relief may be granted, Defendants assert the following five arguments: (1) the

Complaint generally fails to allege facts plausibly suggesting the elements of the claims asserted;

(2) UCSD and UCDAO do not have the legal capacity to be sued; (3) based on Plaintiff's factual

allegations, Defendants Carnright and Assistant District Attorney William J. Weishaput

("Weishaput") are protected from liability as a matter of law by the doctrine of absolute

prosecutorial immunity; (4) based on Plaintiff's factual allegations, Defendants Dreiser and

Fulford are protected from liability as a matter of law by the doctrine of qualified immunity; and

(5) Plaintiff's claims under New York law must be dismissed because Plaintiff failed to file a

Notice of Claim.  (*See generally* Dkt. No. 9-2.)

Generally, in response to Defendants' motion to dismiss, Plaintiff asserts the following

four arguments: (1) Plaintiff has satisfied the pleading requirements under Fed. R. Civ. P. 8(a);

(2) Defendants Carnright and Weishaput are not entitled to absolute immunity; (3) Defendants

Dreiser and Fulford are not entitled to qualified immunity; and (4) Plaintiff's claims under New

York law against Defendants named in their individual capacities should not be dismissed

because a Notice of Claim is not required where, as here, the County is not obligated to

indemnify those Defendants.  (*See generally* Dkt. No. 11.)

Generally, in reply to Plaintiff's response, Defendants assert the following arguments: (1)

based on Plaintiff's factual allegations that Defendants Carnright and Weishaput acted as

advocates in the initiation of prosecution of Plaintiff, they are entitled to absolute immunity; (2)

based on Plaintiff's factual allegations that the Defendants Carnright, Weishaput, Dreiser and

Fulford acted within the scope of their employment, Plaintiff's New York law claims against

4

them must be dismissed due to his failure to file a Notice of Claim; and (3) Plaintiff fails to allege facts plausibly suggesting the elements of the claims asserted.

## II.  RELEVANT LEGAL STANDARDS

### A.  Legal Standard Governing Motions to Dismiss for Failure to State Claim

It has long been understood that a defendant may base a motion to dismiss for failure to state a claim upon which relief can be granted on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such motions are often based on the first ground, a few words on that ground are appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added].  In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case).  On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-83, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 561, 127 S. Ct. at 1968-69. Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 556-70, 127 S. Ct. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean the pleading must contain at least "some factual allegation[s]." *Id*. at 555, 127 S. Ct. at 1965, n.3. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level],"

assuming (of course) that all the allegations in the complaint are true.  *Id.* at 554, 127 S. Ct. at1965.[2]

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . .  [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 [internal quotation marks and citations omitted].  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement."  *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action,

---

[2]      It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which (when reviewing a *pro se* pleading) the Court stated, "*Specific* facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2). *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200 (2007) [emphasis added].  That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965, n.3 (citing *Conley*, 355 U.S. at 47) [emphasis added].  That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever.  Clearly, there must still be enough facts set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F. Supp. 2d at 214 & n.35 (explaining holding in *Erickson*).

supported by merely conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at

1949.  Similarly, a pleading that only "tenders naked assertions devoid of further factual

enhancement" will not suffice.  *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949  (internal citations and

alterations omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation."  *Id.*, at 678, 129 S. Ct. at 1949.

### B.      Legal Standards Governing Plaintiff's Claims

#### 1.      42 U.S.C. § 1983

In order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege "(1) that

some person has deprived him of a federal right, and (2) that the person who has deprived him of

that right acted under color of state ... law."  *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005)

(quoting *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S. Ct. 1920 (1980) (internal quotations

omitted)).  "Section 1983 is not itself a source of substantive rights[,] but merely provides a

method for vindicating federal rights elsewhere conferred[.]"  *Patterson v. County of Oneida*,

375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3, 99 S. Ct.

2689 (1979)).

#### 2.      Malicious Prosecution

To state a claim for malicious prosecution under either § 1983 or New York common

law, a plaintiff must allege the (1) commencement of a criminal proceeding against him, (2)

termination of the proceeding in plaintiff's favor, (3) lack of probable cause, and (4) institution

of the proceedings by defendants with actual malice.  *See Swartz v. Insogna*, No. 11-2846-CV,

2013 WL 28364, at *5 (2d Cir. Jan. 13, 2013).  Moreover, because a malicious prosecution claim

under § 1983 is grounded in the Fourth Amendment right to be free from unreasonable seizures,

a plaintiff must also allege a post-arraignment seizure.  *See Swartz*, 2013 WL 28364, at *5.  The

Court of Appeals for the Second Circuit has "consistently held that a post-arraignment defendant who is obligated to appear in court in connection with criminal charges whenever his attendance is required suffers a Fourth Amendment deprivation of liberty." *Id.* (citations omitted).

### 3.   Abuse of Process

To state a claim for abuse of process under either § 1983 or New York common law, a plaintiff must allege that the defendant "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse [or] justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Hoffman v. Town of Southampton*, No. No. 11–CV–3690, 2012 WL 4465779, at *8 (E.D.N.Y. Sept. 28, 2012) (citing *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir .2003)). By definition, the malicious abuse of process is a denial of procedural due process. *See Hoffman*, 2012 WL 4465779, at *8 (citing *Sullivan v. LaPlante*, 03-CV-359, 2005 WL 1972555, at *3 (N.D.N.Y. Aug. 16, 2005); *Dickerson v. Monroe Cnty. Sheriff's Dep't*, 114 F. Supp. 2d 187, 192 (W.D.N.Y. 2000)).

Regarding the third element of a claim for abuse of process, a plaintiff must allege that defendants had an improper *purpose* in instigating the action–an improper *motive* will not suffice. *See Hoffman*, 2012 WL 4465779, at *9 (citing *Savino*, 331 F.3d at 77). Where a defendant's objective in initiating an arrest is to prevail on a criminal prosecution, the plaintiff will not prevail on a claim for abuse of process. *See id.*, at *10 (citing *Savino*, 331 F.3d at 77).

### 4.   Violation of Right to Due Process

A claim for violation of one's due process rights, " brought for injury to one's reputation . . . coupled with the deprivation of some tangible interest or property right . . ., without adequate process[]" is commonly referred to as a "stigma plus" claim. *DiBlasio v. Novello*, 344 F.3d 292,

302 (2d Cir. 2003). In order to state a "stigma plus" due process claim, a plaintiff must allege "(1) the utterance of a statement about h[im] that is injurious to h[is] reputation, that is capable of being proved false, and that he [] claims is false, and (2) some tangible and material state-imposed burden in addition to the stigmatizing statement." *Jackson v. New York City Dept. of Educ.*, No. 10-CV-9193, 2011 WL 2652577, at *3 (S.D.N.Y. Jul. 7, 2011) (quoting *Velez*, 401 F.3d at 87).

"[T]he Supreme Court [has] recognized that while damage to reputation alone is insufficient to establish a claim for harm to a liberty interest, a cognizable claim will lie if a plaintiff can show loss of reputation plus some serious additional harm, such as loss of employment, as a result of defamatory remarks by a government official." *Komlosi v. New York State Office of Mental Retardation and Developmental Disabilities*, 64 F.3d 810, 817 (2d Cir. 1995) (citing *Paul v. Davis*, 424 U.S. 693, 710, 96 S. Ct. 1155, 1165 (1976)).

There is no requirement that both the "stigma" and the "plus" originate from the same government actor as long as they are alleged to be sufficiently proximate. *See Velez*, 401 F.3d at 89. The sufficient proximity requirement "will be satisfied where (1) the stigma and plus would, to a reasonable observer, appear connected-for example, due to their order of occurrence . . . and (2) the actor imposing the plus adopted (explicitly or implicitly) those statements in doing so." *Id.* However, where the party responsible for the defamatory remarks (the stigma) does not have the authority to terminate the plaintiff's employment (the plus), that party cannot be liable to the plaintiff on his stigma plus claim. *See Anemone v. Metropolitan Transp. Authority*, 410 F. Supp. 2d 255, 270-71 (S.D.N.Y. 2006) (citing *Velez*, 401 F.3d at 89-93).

###### 5.      Slander

To state a claim for slander under New York common law, a plaintiff must allege "(1) an

oral defamatory statement of fact; (2) about the plaintiff; (3) the statement's publication to a

third party; and (4) injury to the plaintiff." *Mobile Data Shred, Inc. v. United Bank of*

*Switzerland*, No. 99-CV-10315, 2000 WL 351516, at *6 (S.D.N.Y. Apr. 5, 2000) (citing *Weldy*

*v. Piedmont Airlines, Inc.*, 985 F.2d 57, 61 (2d Cir.1993); *Ives v. Guilford Mills, Inc.*, 3 F. Supp.

2d 191, 199 (N.D.N.Y.1998)).  "In evaluating the sufficiency of claims of slander, the courts in

this Circuit have required that the complaint adequately identify the allegedly defamatory

statements, the person who made the statements, the time when the statements were made, and

the third parties to whom the statements were published." *Mobil DataShred, Inc.*, 2000 WL

351516, at *6 (citing *Ives*, 3 F. Supp. 2d at 199; *Broome v. Biondi*, No. 96-CV-0805, 1997 WL

83295, at *2 (S.D.N.Y. Feb. 10, 1997); *Reeves v. Continental Equities Corp. of Am.*, 767 F.

Supp. 469, 473 (S.D.N.Y.1991)).  "[S]lander[] is not actionable under § 1983 unless it implicates

a liberty interest." *Davis-Payne v. Galie*, No. 09-CV-6363, 2012 WL 4959445, at *5 (W.D.N.Y.

Oct. 16, 2012) (citing *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 630-31

(2d Cir. 1996)).

###### 6.      Failure to Train or Supervise

It is well established that "[a] municipality may not be held liable in a Section 1983

action for the conduct of a lower-echelon employee solely on the basis of *respondeat superior*."[3]

"Rather, to establish municipal liability under § 1983 for unconstitutional acts by a

---

[3]      *Powell v. Bucci*, 04-CV-1192, 2005 WL 3244193, at *5 (N.D.N.Y. Nov. 30,
2005) (McAvoy, J.); *see also Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("[A]
local government may not be sued under § 1983 for an injury inflicted solely by its employees or
agents."); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("[A] [municipality] may not
be held for the actions of its employees or agents under a theory of *respondeat superior*.").

municipality's employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy."[4]   "Thus, to hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to . . . prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."[5]

With regard to the first element (the existence of a policy or custom), a "[p]laintiff may establish the 'policy, custom or practice' requirement by demonstrating: (1) a formal policy officially endorsed by the municipality . . . ; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question . . . . ; (3) a practice so consistent and widespread that it constitutes a 'custom or usage' sufficient to impute constructive knowledge to the practice of policymaking officials . . . ; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to 'deliberate indifference' to the rights of those who come in contact with the municipal employees. . . ."[6]

---

[4]     *Powell*, 2005 WL 3244193, at *5; *Monell*, 436 U.S. at 690-691 ("[L]ocal governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."); *Batista*, 702 F.2d at 397 ("[M]unicipalities may be sued directly under § 1983 for constitutional deprivations inflicted upon private individuals pursuant to a governmental custom, policy, ordinance, regulation, or decision."); *Smith v. City of New York*, 290 F. Supp. 2d 317, 321 (S.D.N.Y. 2003) ("In order to establish the liability of [municipal] defendants in an action under § 1983 for unconstitutional acts by [its] employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy.").

[5]     *Batista*, 702 F.2d at 397, *accord*, *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995), *McKeon v. Daley*, 101 F. Supp.2d 79, 92 (N.D.N.Y. 2000) (Hurd, J.), *Merriman v. Town of Colonie, NY*, 934 F. Supp. 501, 508 (N.D.N.Y. 1996) (Homer, M.J.); *Douglas v. Cnty. of Tompkins*, 90-CV-0841, 1995 WL 105993, at *12 (N.D.N.Y. March 2, 1995) (McCurn, J.), *Keyes v. Cnty. of Albany*, 594 F. Supp. 1147, 1156 (N.D.N.Y. 1984) (Miner, J.).

[6]     *Dorsett-Felicelli, Inc.*, 371 F. Supp.2d 183, 194 (N.D.N.Y. 2005) (Kahn, J.) (citing three Supreme Court cases for these four ways), *accord*, *Dunbar v. Cnty. of Saratoga*,

With regard to the second element (causation), a plaintiff must show "a direct causal link" or "an affirmative link" between the municipal policy or custom and the alleged constitutional deprivation (i.e., that the policy or custom was the "moving force" behind the deprivation).[7]

### 7.    Conspiracy to Violate Plaintiff's Rights

To state a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff muse allege: (1) some racial or other class-based discriminatory animus underlying the defendant's actions; and (2) that the conspiracy was aimed at interfering with plaintiff's protected rights.  *See Brito v. Arthur*, 403 F. App'x 620, 621 (2d Cir. 2010) (citing *Bray v. Alexandria Women's Health Clinic*, 506 U.S.

---

358 F. Supp. 2d 115, 133-134 (N.D.N.Y. 2005) (Munson, J.); *see also Clayton v. City of Kingston*, 44 F. Supp.2d 177, 183 (N.D.N.Y. 1999) (McAvoy, J.) (transposing order of second and third ways, and citing five more Supreme Court cases).

[7]        *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) ("[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823, n.8 (1985) ("The fact that municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a constitutional violation.  There must at least be an affirmative link between [for example] the training inadequacies alleged, and the particular constitutional violation at issue."); *Monell*, 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983.  Since this case unquestionably involves official policy as the moving force of the constitutional violation [at issue] . . . we must reverse the judgment below."); *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("A plaintiff who seeks to hold a municipality liable in damages under section 1983 must prove that . . . an official policy or custom [was] the cause of the deprivation of constitutional rights. . . . [T]he plaintiff must establish a causal connection–an affirmative link–between the policy and the deprivation of his constitutional rights.") [internal quotation marks and citation omitted]; *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiff's injury, *Monell* prohibits a finding of liability against the City."); *Powell*, 2005 WL 3244193, at *5 ("Ultimately, the plaintiff must demonstrate a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation.") [internal quotation marks and citation omitted].

263, 268, 113 S. Ct. 753 (1993)).[8]  Vague and conclusory allegations that defendants entered into

an unlawful agreement will not suffice to state a claim under § 1985(3).  *See Kiryas Joel*

*Alliance v. Village of Kiryas Joel*, No. 12-217-CV, 2012 WL 3892744, at *5 (2d Cir. Sept. 10,

2012) (citing *Gyadu v. Hartford Ins. Co.*, 197 F.3d 590, 591 (2d Cir.1999)); *Emmerling v. Town*

*of Richmond*, 434 F. App'x 10, 12 (2d Cir. 2011).  Instead, "a plaintiff must provide some factual

basis supporting a meeting of the minds, such that defendants entered into an agreement, express

or tacit, to achieve the unlawful end."  *Kiryas Joel Alliance*, 2012 WL 3892744, at *5 (quoting

*Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003)).  In addition, a plaintiff may only state a

claim under § 1985(3) where he alleges a conspiracy "motivated by some racial, or perhaps

otherwise class-based, invidiously discriminatory animus."  *Harrison v. Lutheran Med. Cent.*,

468 F. App'x 33, 37 (2d Cir. 2012) (quoting *United Bd. of Carpenters & Joiners v. Scott*, 463

U.S. 825, 828-29, 103 S. Ct. 3352 (1983)).

### C.    Legal Standards Governing Defendants' Defenses

#### 1.    Defense of Lack of Separate Identity

Pursuant to Fed. R. Civ. P. 17, New York law governs the capacity of an administrative

arm of a municipality to sue or be sued.  Under New York law, an administrative arm of a

municipality, such as UCSD or UCDAO, does not have a legal identity separate and apart from

the municipality, and therefore, cannot sue or be sued.  *See Davis v. Lynbrook Police Dept.*, 224

F. Supp. 2d 463, 477 (E.D.N.Y. 2002).  Accordingly, Defendants' motion to dismiss all claims

against Defendants UCSD and UCDAO is granted.

---

[8]      Plaintiff's Complaint states that he brings his action under, among other laws, 42
U.S.C. § 1985(1).  However, his opposition memorandum of law cites the standard for pleading
a claim pursuant to § 1985(3).  Because the allegations in the Complaint do not comport with the
requirements of § 1985(1), which prohibits conspiracies to prevent federal officials from
performing their duties, the Court addresses Plaintiff's claim under § 1985(3).

### 2.      Defense of Qualified Immunity

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless

defendant's alleged conduct, when committed, violated "clearly established statutory or

constitutional rights of which a reasonable person would have known.'"  *Williams v. Smith*, 781

F.2d 319, 322 (2d Cir. 1986) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 [1982]).  As a

result, a qualified immunity inquiry in a civil rights case generally involves two issues: (1)

"whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional

violation"; and (2) "whether it would be clear to a reasonable [official] that his conduct was

unlawful in the situation confronted."  *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004)

[citations omitted], *accord*, *Higazy v. Templeton*, 505 F.3d 161, 169, n.8 (2d Cir. 2007) [citations

omitted].

In determining the second issue (i.e., whether it would be clear to a reasonable official

that his conduct was unlawful in the situation confronted), courts in this Circuit consider three

factors:

> (1) whether the right in question was defined with 'reasonable
> specificity'; (2) whether the decisional law of the Supreme Court and
> the applicable circuit court support the existence of the right in
> question; and (3) whether under preexisting law a reasonable
> defendant official would have understood that his or her acts were
> unlawful.

*Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991) [citations omitted], *cert. denied*, 503 U.S.

962 (1992).[9]  "As the third part of the test provides, even where the law is 'clearly established'

---

[9]      *See also Pena v. DePrisco*, 432 F.3d 98, 115 (2d Cir. 2005); *Clue v. Johnson*, 179
F.3d 57, 61 (2d Cir. 1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir. 1997); *Shechter v.
Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir. 1996); *Rodriguez v. Phillips*, 66 F.3d
470, 476 (2d Cir. 1995); *Prue v. City of Syracuse*, 26 F.3d 14, 17-18 (2d Cir. 1994); *Calhoun v.
New York State Division of Parole*, 999 F.2d 647, 654 (2d Cir. 1993).

and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity

defense also protects an official if it was 'objectively reasonable' for him at the time of the

challenged action to believe his acts were lawful."  *Higazy v. Templeton*, 505 F.3d 161, 169-70

(2d Cir. 2007) [citations omitted].[10]  This "objective reasonableness" part of the test is met if

"officers of reasonable competence could disagree on [the legality of defendant's actions]."

*Malley v. Briggs*, 475 U.S. 335, 341 (1986).[11]  As the Supreme Court has explained,

> [T]he qualified immunity defense . . . provides ample protection to all but
> the plainly incompetent or those who knowingly violate the law.
> . . . Defendants will not be immune if, on an objective basis, it is obvious
> that no reasonably competent officer would have concluded that a warrant
> should issue; but if officers of reasonable competence could disagree on
> this issue, immunity should be recognized.

*Malley*, 475 U.S. at 341.[12]

### 3.	Defense of Absolute Prosecutorial Immunity

"Prosecutors are generally immune from liability . . . for conduct in furtherance of

prosecutorial functions that are intimately associated with initiating or presenting the State's

case." *Flagler v. Trainor*, 663 F.3d 543, 546 (2d Cir. 2011).  The doctrine of absolute

---

[10]	*See also Anderson v. Creighton*, 483 U.S. 635, 639 (1987) ("[W]hether an official
protected by qualified immunity may be held personally liable for an allegedly unlawful official
action generally turns on the 'objective reasonableness of the action.'") [citation omitted]; *Davis
v. Scherer*, 468 U.S. 183, 190 (1984) ("Even defendants who violate [clearly established]
constitutional rights enjoy a qualified immunity that protects them from liability for damages
unless it is further demonstrated that their conduct was unreasonable under the applicable
standard."); *Benitez v. Wolff*, 985 F.2d 662, 666 (2d Cir. 1993) (qualified immunity protects
defendants "even where the rights were clearly established, if it was objectively reasonable for
defendants to believe that their acts did not violate those rights").

[11]	*See also Malsh v. Austin*, 901 F. Supp. 757, 764 (S.D.N.Y. 1995) [citing cases];
*Ramirez v. Holmes*, 921 F. Supp. 204, 211 (S.D.N.Y. 1996).

[12]	*See also Hunter v. Bryant*, 502 U.S. 224, 299 (1991) ("The qualified immunity
standard gives ample room for mistaken judgments by protecting all but the plainly incompetent
or those who knowingly violate the law.") [internal quotation marks and citation omitted].

prosecutorial immunity applies to shield liability in both federal civil rights and state common

law tort actions. *See Flagler*, 663 F. 3d at 546. "The key to whether a prosecutor should be

afforded absolute immunity is the degree to which the specific conduct at issue is 'intimately

associated with the judicial phase of the criminal process.'" *DiBlasio*, 344 F.3d at 300 (quoting

*Imbler v. Pachtman*, 424 U.S. 409, 430 [1976] ). "In assessing whether absolute immunity

should attach to a prosecutor, ... [courts should] ... focus[ ] on the timing of the conduct at issue,

drawing a distinction between the investigative and prosecutorial functions, ... and the authority

of the individual claiming immunity to make the decision to initiate a prosecution." *DiBlasio*,

344 F.3d at 300-01. Thus, as the Supreme Court has stated, "[a] prosecutor neither is, nor should

consider himself to be, an advocate before he has probable cause to have anyone arrested."

*Buckley v. Fitzsimmons*, 509 U.S. 259, 274, 113 S. Ct. 2606, 2616 (1993). Accordingly, where,

as in *Buckley*, a plaintiff claimed that the prosecutor conspired to manufacture false evidence that

would link the plaintiff to a crime during the time that the prosecutor was working hand in hand

with police to investigate the crime, the prosecutor was not entitled to absolute immunity. *See*

*Buckley*, 509 U.S. at 272-274.

### 4.   Defense of Failure to File a Notice of Claim

New York law requires the filing of a Notice of Claim as a condition precedent to the

commencement of any tort action against a municipality or any of their officers, agents or

employees. *See* N.Y. GEN. MUN. LAW § 50-e (McKinney 2012). "This notice-of-claim

requirement is 'construed strictly by New York state courts,' and '[f]ailure to comply with these

requirements ordinarily requires a dismissal for failure to state a cause of action.'" *Berry v.*

*Village of Millbrook*, 815 F. Supp. 2d 711, 724 (S.D.N.Y. 2011) (quoting *Hardy v. N.Y.C. Health*

*& Hosps. Corp.*, 164 F.3d 789, 793-94 (2d Cir.1999)).

Section 52 of the New York County Law requires the service of a notice of claim "in accordance with section fifty-e of the general municipal law" for "[a]ny claim ... against a county for damage, injury or death, or for invasion of personal or property rights, of every name and nature," as well as "any other claim for damages ... alleged to have been caused or sustained in whole or in part because of any misfeasance, omission of duty, negligent or wrongful act on the part of the county, its officers, agents, servants or employees."  N.Y. COUNTY LAW § 52(1) (McKinney 2012).

Regarding claims filed against county employees in their individual capacities, "service of a notice of claim is not a condition precedent to the commencement of an action against a county's employees or agents unless the county is required to indemnify the individual defendants." *Costabile v. County of Westchester*, 485 F. Supp. 2d 424, 432  (S.D.N.Y. 2007) (citing N.Y. GEN. MUN. LAW § 50-e(1)(b)).  Where the employees were acting within the scope of their employment in committing the alleged tortious acts, the county is obligated to indemnify them.  *See Olsen v. County of Nassau*, No. CV-05-3623, 2008 WL 4838705, at *4 (E.D.N.Y. Nov. 4, 2008).  Where, according to a plaintiff's complaint, the defendant county employees were acting outside the scope of their employment, i.e., by the commission of intentional torts, the filing of a notice of claim is unnecessary.  *See Olsen*, 2008 WL 4838705, at *4 (citing *Grasso v. Schenectady County Pub. Library*,  817 N.Y.S.2d 186, 190, 30 A.D.3d 814 (N.Y. App. Div. 2006).

### III.   ANALYSIS

#### A.   Whether Plaintiff's Complaint Should Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted

##### 1.   Whether the Ulster County Sheriff's Department and the Ulster County District Attorney's Office Should Be Dismissed as Defendants

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law.  (Dkt. No. 9-2, at 12.)  The Court would only add the following two points.

First, the Court notes that Plaintiff has failed to respond to this argument for dismissal. At the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond.  In this District, when a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the movant's burden with regard to that argument has been lightened such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden.  *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n. 1 (N.D.N.Y. Oct.30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument.

As indicated above in Part II.C.1. of this Decision and Order, under New York State law, administrative arms of a municipality, like UCSD and UCDAO, do not have a legal identity separate from the municipality and may not sue or be sued.  *See Davis*, 224 F. Supp. 2d at 477.

For these reasons, UCSD and UCDAO are dismissed as Defendants.

### 2.     Whether Plaintiff's § 1983 Claim Against the County is Barred by the Doctrine of Collateral Estoppel

After carefully considering the matter, the Court answers this question in the negative generally for the reasons stated by Plaintiff in his memorandum of law.  (Dkt. No. 11, at 9-10.) Because the parties' briefing on this issue is sparse, the Court adds the following analysis.

By way of background, Plaintiff filed a verified complaint against the County with the New York State Division of Human Rights ("DHR") on February 11, 2010, wherein Plaintiff alleges that the County unlawfully discriminated against him based on his race relating to his employment in violation of New York Human Rights Law.  Specifically, Plaintiff alleged that, because of his race, an incident involving alleged inmate abuse was investigated differently than a similar incident of inmate abuse involving a Caucasian corrections officer.  Plaintiff further alleged that, despite being cleared of criminal charges in the alleged assault, the Sheriff's Department was involved in Plaintiff being harassed and arrested at his home regarding an unrelated road rage incident.  The DHR issued its determination that there is no probable cause to believe that the County engaged in the unlawful discriminatory practice of which Plaintiff complained.  Defendants now argue that Plaintiff is collaterally estopped from re-litigating this issue in support of his § 1983 claim against the County.

To be sure, Plaintiff does not reference the DHR's determination in his Complaint. However, Defendants submit the determination as an attachment to its attorney affidavit in

support of their current motion.  (Dkt. No. 9-1, at 15.)  Notably, Plaintiff does not object to

Defendants' reliance on the document in support of their motion to dismiss his Complaint.  In

any event, because the DHR's determination is a public record of which the Court may take

judicial notice, the Court may properly consider it when deciding Defendants' motion.  *See*

*Johnson v. County of Nassau*, 411 F. Supp. 2d 171, 178 (E.D.N.Y. 2006).

      The doctrine of collateral estoppel, otherwise known as issue preclusion, applies when

> (1) the identical issue was raised in a previous proceeding; (2) the
> issue was actually litigated and decided in the previous proceeding;
> (3) the party had a full and fair opportunity to litigate the issue; and
> (4) the resolution of the issue was necessary to support a valid and
> final judgment on the merits.

*Finch v. New York*, No. 10-CV-9691, 2012 WL 2866253, at *6 (S.D.N.Y. May 30, 2012) (citing

*Boguslavsky v. Kaplan,* 159 F.3d 715, 719-20 (2d Cir. 1998).  In some circumstances, collateral

estoppel may apply to preclude litigation of a § 1983 claim that has been previously decided in a

state administrative proceeding.  However, the Court of Appeals for the Second Circuit has held

that in order for collateral estoppel to apply to preclude federal claims due to a prior state

administrative determination, the plaintiff must have been "fully aware of the nature and

ramifications of the state administrative process, ha[d] the opportunity to present evidence and

testimony, and [was] able to develop the evidentiary record fully."  *Finch*, 2012 WL 2866253, at

*6 (citing *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 735-36 (2d Cir.

2001)).

> In determining whether plaintiff had a full and fair opportunity to
> litigate her claims, the Court considers "the size of the claim, the
> forum of the prior litigation, the use of initiative, the extent of the
> litigation, the competence and experience of counsel, the availability
> of new evidence, indications of a compromise verdict, differences in
> the applicable law and foreseeability of future litigation."

*Id.* (quoting *Schwartz v. Public Adm'r of Cnty. of Bronx*, 246 N.E.2d 725, 24 N.Y.2d 65, 72, 298 N.Y.S.2d 955 (1969)).  *See also Jeter v. New York City Dep't of Educ.*, 549 F. Supp. 2d 295, 305 (E.D.N.Y. 2008).

Courts in this Circuit that have declined to dismiss § 1983 claims in the employment discrimination context based on the asserted collateral estoppel effect of previous decisions from the DHR have done so predominantly due to the plaintiff's *pro se* status before the DHR as well as the absence of any record reflecting that discovery was conducted or that a hearing was held in that forum.  *See Finch*, 2012 WL 2866253, at *6-7; *Jeter*, 549 F. Supp. 2d at 305 at 305; *Lloyd v. New York Botanical Garden*, No. 03-CV-7557, 2004 WL 2093468, at *3-4 (S.D.N.Y. Sept. 14, 2004).  Consequently, those courts decided that, because the plaintiff did not have a full and fair opportunity to litigate the issues before the DHR, collateral estoppel did not preclude adjudication of the § 1983 claims in federal court.  Here, as in *Finch*, *Jeter* and *Lloyd*, Plaintiff appeared before the DHR *pro se*.  Moreover, as in those cases, here the DHR's determination reflects only that a decision was made on submitted papers, not after a hearing, and that no confrontation of opposing witnesses occurred.  Conversely, courts that have found a plaintiff's § 1983 claims to be precluded by a DHR determination have considered that the plaintiff, unlike Plaintiff here, was represented by counsel and that, unlike here, the DHR's decision was appealed to State court and the DHR's decision was made after more formal and comprehensive proceedings.  *See Lloyd*, 2004 WL 2093468, at *4 (citing cases).

Accordingly, considering Plaintiff's *pro se* status before the DHR, his inability to confront witnesses or appear at a hearing, and the generally informal nature of proceedings before the DHR, the Court concludes that Plaintiff's § 1983 claims are not precluded by the DHR's determination.

### 3.   Whether Plaintiff's Claims Against the County Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Municipal Liability

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law.  (Dkt. No. 9-2, at 8.)  The Court would add only the following brief point.

As indicated above in Part II.B.6. of this Decision and Order, Plaintiff must allege facts plausibly suggesting that the municipality "has adopted a 'custom' or 'policy' which is the 'moving force' behind [the violation]." *Zappala v. Albicelli*, 980 F. Supp 635, 639 (N.D.N.Y. 1997) (Scullin, J.) (citing, *inter alia*, *Monell v. Dept of Soc. Servs. of City of New York*, 436 U.S. 658, 689 [1978]).  Further, a "failure to train or supervise" employees constitutes a policy or custom where it amounts to deliberate indifference to the rights of those with whom the employee comes in contact.  In order to successfully plead such a claim, a plaintiff must allege that "the need for more or better supervision was obvious but that the defendant made no meaningful attempt to prevent the constitutional violation." *Missel v. County of Monroe*, 351 F. App'x 543, 546 (2d Cir.2009).  A "'simple recitation that there was a failure to train municipal employees,' does not sufficiently allege a claim that would give rise to municipal liability." *Bliven v. Hunt*, 478 F. Supp. 2d 332, 339 (E.D.N.Y. 2007) (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir.1993)).

Here, Plaintiff has alleged that the County was deliberately indifferent to his rights by failing to properly train and supervise its employees to prevent the unlawful investigation and prosecution of African Americans.  However, Plaintiff fails to identify any other occurrences of similar conduct which would have alerted the County to the need for training or supervision. *See Missel v. County of Monroe*, No. 07-CV-5482, 2008 WL 2357637, at *5-6 (W.D.N.Y. June 4, 2008) (aff'd, 351 F. App'x 543, 546 (2d Cir.2009)).  Accordingly, Plaintiff has not alleged

23

enough facts to support a plausible inference that his alleged unlawful investigation and prosecution occurred pursuant to a formal course of action officially promulgated by the County. *See Missel*, 351 F. App'x at 555.

For this reason, Plaintiff's § 1983 claim against the County for failure to train or supervise is dismissed.

### 4. Whether Plaintiff's New York Common Law Claims Against the Individually Named Defendants Must Be Dismissed for Failure to File a Notice of Claim

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated by Plaintiff in his memorandum of law. (Dkt. 11, at 11-12.) The Court would add only the following brief point.

As indicated above in Part II.C.4. of this Decision and Order, the filing of a Notice of Claim is not a condition precedent to the commencement of an action against County employees unless the County is required to indemnify them. Where, as here, the employees are alleged to have committed intentional torts, the County is not required to indemnify them because such actions are considered outside the scope of their employment.

For this reason, Defendants' motion to dismiss Plaintiff's New York common law claims of slander, malicious prosecution and abuse of process against Defendants Dreiser, Fulford, Carnright and Weishaput on the ground that those claims are barred by Plaintiff's failure to file a Notice of Claim is denied.

### 5. Whether Plaintiff's Malicious Prosecution Claim Should Be Dismissed

After carefully considering the matter, the Court answers this question in the negative, in part for the reasons stated by Plaintiff in his memorandum of law. (Dkt. No. 11, at 4-7.) The Court would further add the following brief points.

24

Defendants argue that Plaintiff's malicious prosecution claim should be dismissed because he fails to plead facts plausibly suggesting malice and a lack of probable cause for both the assault and criminal mischief prosecutions.  Plaintiff has failed to respond to this argument regarding the assault prosecution.  Moreover, a liberal reading of the Complaint reveals that Plaintiff has failed to allege facts plausibly suggesting that there was no probable cause for his assault arrest and prosecution.  Accordingly, to the extent Plaintiff purports to state a claim for malicious prosecution regarding his assault arrest, Defendants' motion to dismiss that claim is granted.

Regarding Plaintiff's arrest for criminal mischief, the Complaint alleges that the complaining witness informed "investigators and the Defendants from the District Attorney's Office that Plaintiff was not the individual about whom he complained."  (Compl. ¶ 32, Dkt. No. 1.)  Plaintiff alleges that nonetheless, he was charged with criminal mischief.  Plaintiff further alleges that he was exonerated, and that Defendants acted with malice.  (Id., ¶¶ 34, 36.)  Moreover, as indicated above in Part II.B.2., a post arraignment defendant who is obligated to appear in court suffers the requisite Fourth Amendment deprivation of liberty to state a malicious prosecution claim under § 1983.  Accordingly, Plaintiff has stated a claim of malicious prosecution regarding his arrest for criminal mischief under both New York common law and § 1983.

To be sure, although Plaintiff alleges that Defendant Fulford responded to the complainant's road rage report "upon realizing Plaintiff's name was involved in the incident[,]" the Complaint is devoid of any allegations that Fulford was involved in the arrest or prosecution of Plaintiff regarding the criminal mischief charge, or that he was involved in any of the incidents giving rise to Plaintiff's claims.  Moreover, Plaintiff fails to allege that Defendant

Dreiser was at all involved in Plaintiff's arrest or prosecution for criminal mischief. Accordingly, Defendants' motion to dismiss is granted insofar as Plaintiff purports to state a malicious prosecution claim against Fulford or Dreiser.

For these reasons, Defendants' motion to dismiss Plaintiff's malicious prosecution claim is granted to the extent Plaintiff purports to base his claim on his assault arrest or to the extent he seeks to assert his claim against Fulford or Dreiser. Defendants' motion to dismiss Plaintiff's malicious prosecution claim against Carnright and Weishaput, pursuant to § 1983 and New York common law, is denied. Consequently, Defendants' motion to dismiss Plaintiff's New York common law claim for malicious prosecution against the County for the conduct of Carnright and Weishaput under a respondeat superior theory is also denied.

### 5. Whether Plaintiff's Abuse of Process Claim Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative, generally for the reasons stated by Defendants in their reply memorandum of law. (Dkt. No. 12, at 3-4.) The Court would add only the following point.

As indicated above in Part II.B.3. of this Decision and Order, in order to state a claim for abuse of process, a plaintiff must allege that defendants had an improper purpose in instigating legal action, as opposed to an improper motive, which will not suffice. "A malicious motive alone ... does not give rise to a cause of action for abuse of process." *Savino*, 331 F.3d at 77 (quoting *Curiano v. Suozzi*, 469 N.E.2d 1324, 63 N.Y.2d 113, 117, 480 N.Y.S.2d 466, 468-69 (N.Y. 1984)). Instead, to state a claim for, as here, abuse of criminal process, a plaintiff must claim that defendants "aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Savino*, 331 F.3d at 77. Here, Plaintiff alleges only that Defendants' conduct was racially motivated. The Complaint is devoid of any allegations of an improper

purpose for the criminal prosecution of Plaintiff beyond the alleged racial discrimination.

For this reason, Defendants' motion to dismiss Plaintiff's abuse of process claim is granted.

### 6.    Whether Plaintiff's Due Process Claim Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative, generally for the reasons stated by Defendants in their memorandum of law.  (Dkt. No. 9-2, at 7.) The Court would add only the following points.

Plaintiff alleges that UCSD or one of its agents informed Plaintiff's part time employers, the Towns of Shandaken and Woodstock, of false information regarding the alleged incident of assault, and that as a result, Plaintiff was fired from his positions with the Towns.  (Compl. ¶¶ 19-20, Dkt. No. 1.)  Neither of the Towns are defendants to this action, and Plaintiff does not allege that the County or any agent thereof had the authority to terminate his employment with the Towns.  As indicated above in Part II.B.4. of this Decision and Order, where the party responsible for the defamatory remarks does not have the authority to terminate the plaintiff's employment, that party cannot be liable to the plaintiff on his stigma plus claim.  *See Anemone*, 410 F. Supp. 2d at 270-71 (citing *Velez*, 401 F.3d at 89-93).  Accordingly, to the extent Plaintiff asserts a stigma plus claim against the County for the loss of his part time employment with the Towns, Defendants' motion to dismiss that claim is granted.

To the extent Plaintiff asserts a stigma plus claim against Defendants, the claim is also dismissed because Plaintiff does not allege that he was terminated from his employment with the County, only that he was subject to disciplinary suspension without pay for thirty days.  (Id., ¶¶ 17-18.)  Further, Plaintiff's stigma plus claim must be dismissed in this regard because a disciplinary hearing provides all the process that is due.  *See Miller v. City of Ithaca*, No. 10-CV-

27

597, 2010 WL 3809842, at *11-12 (N.D.N.Y. Sept. 22, 2010) (citing *DiBlasio*, 344 F.3d at 302).

For these reasons, Defendants' motion to dismiss Plaintiff's due process claim is granted.

### 7. Whether Plaintiff's Slander Claim Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative, generally for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 9-2, at 7-8.) The Court would add only the following point.

As indicated above in Part II.B.5. of this Decision and Order, in order to state a claim for slander, a plaintiff must identify the alleged defamatory statements, the person who made the statements, when the statements were made, and to whom. Where, for example, a complaint "fail[ed] to allege any of the specific words forming the claim of slander[,] fail[ed] to set out when and where any of the statements were made[, and where, a]lthough two people to whom the statements were allegedly made [we]re identified, [but] others [we]re simply identified as 'colleagues[,]'" a slander claim was dismissed. *Laine v. Pride*, 926 N.Y.S.2d 344, 30 Misc. 3d 1233(A) (N.Y. Sup. Ct. 2011). *See also Monsanto v. Elec. Data Sys. Corp.*, 529 N.Y.S.2d 512, 515, 141 A.D.2d 514, 516 (N.Y. App. Div. 1988) ("mandating dismissal" of a claim for defamation where plaintiff failed to plead the "particular words complained of" or "the particular person to whom the allegedly defamatory comments were made").

Here, Plaintiff alleges only that "Defendant, Ulster County Sheriff's Department, or an agent thereof, informed Plaintiff's part-time employers, the Town of Shandaken and the Town of Woodstock[,] false information regarding" the incident of alleged assault. (Compl. ¶ 19, Dkt. No. 1.) Plaintiff fails to specifically identify who made the statement, to whom the statement was made or when it was made. Further, Plaintiff's allegation that "false information" was conveyed regarding the incident of alleged assault is too vague to satisfy the standard for a

slander claim in New York.

For these reasons, Defendants' motion to dismiss Plaintiff's claim for slander is granted.

### 8.      Whether Plaintiff's § 1985 Conspiracy Claim Must Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative, partly for the reasons stated in Defendants' memorandum of law.  (Dkt. No. 9-2, at 9-10.)  The Court would only add the following points.

As indicated above in Point II.B.7. of this Decision and Order, vague and conclusory allegations that defendants entered into an unlawful agreement will not suffice to state a claim under § 1985(3), without some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.  Here, Plaintiff fails to meet this requirement, instead alleging only that "Defendants acted in concert" and with malice.  (Compl. ¶¶ 36, 53, Dkt. No. 1.)  For this reason alone, Plaintiff's § 1985 claim fails.

In addition, because only Carnright and Weishaput, both employees of the Ulster County District Attorney's Office, remain as defendants, Plaintiff's § 1985 claim fails under the intra-corporate conspiracy doctrine, which provides that "officers, agents and employees of a single corporate entity are legally incapable of conspiring together."  *Hartline v. Gallo*, 546 F.3d 95, 99, n.3 (2d Cir. 2008) (affirming district court's dismissal of a claim against multiple employees of a police department on this ground).

For these reasons, Defendants' motion to dismiss Plaintiff's § 1985 claim is granted.

**9.      Whether, in the Alternative, Plaintiff's Claims Against Defendants Dreiser and Fulford Should Be Dismissed Because, Based on the Factual Allegations of the Complaint, Defendants Dreiser and Fulford Are Protected from Liability as a Matter of Law by the Doctrine of Qualified Immunity**

All of Plaintiff's claims against Defendants Dreiser and Fulford are dismissed for failure

to state a claim.  For this reason, the Court need not, and does not, address Defendants'

alternative argument that Defendants Dreiser and Fulford are entitled to qualified immunity.

**10.     Whether, in the Alternative, Plaintiff's Claims Against Defendants Carnright and Weishaput Should Be Dismissed Because, Based on the Factual Allegations of the Complaint, Defendants Carnright and Weishaput Are Protected from Liability as a Matter of Law by the Doctrine of Absolute Prosecutorial Immunity**

After carefully considering the matter, the Court answers this question in the negative,

generally for the reasons stated by Plaintiff in his memorandum of law.  (Dkt. No. 11, at 10-11.)

The Court would add only the following point.

As indicated above in Point II.C.4. of this Decision and Order, absolute immunity will

not protect a prosecutor from liability where his or her conduct giving rise to plaintiff's claim

occurred outside the prosecutor's role as an advocate.  "The line between a prosecutor's

advocacy and investigating roles might sometimes be difficult to draw." *Zahrey v. Coffey*, 221

F.3d 342, 347 (2d Cir. 2000).  Here, Plaintiff alleges that the complaining witness told

investigators and Defendants from the District Attorney's office that Plaintiff was not the

individual about whom he alleged caused damage to his vehicle.  (Compl. ¶¶ 31-32, Dkt. No. 1.)

Plaintiff next alleges that he "was nevertheless charged with Criminal Mischief as a result of the

incident."  (*Id.*, at ¶ 32.)  It is unclear from these allegations whether the complaining witness

told Carnright and Weishaput that Plaintiff was not the individual about whom he complained

(1) prior to the point at which authorities had probable cause to arrest Plaintiff, during which

30

time absolute immunity would not attach or (2) after probable cause to arrest, during a time when Carnright and Weishaput were deciding whether or not to begin a criminal prosecution, and absolute immunity would attach.  *See Best v. City of New York*, No. 11-CV-4475, 2012 WL 5458054, at *6 (S.D.N.Y. Nov. 8, 2012).[13]  Where, as here, it may not be gleaned from the allegations in the complaint whether a defendant prosecutor was acting in his or her role as an investigator or as an advocate, the availability of absolute immunity cannot be decided as a matter of law on a motion to dismiss.  *See id.* (citing *Hill v. City of New York*, 45 F.3d 653, 663 (2d Cir. 1995)).

For this reason, Defendants' motion to dismiss the remaining claim for malicious prosecution against Carnright and Weishaput under the doctrine of absolute prosecutorial immunity is denied.  However, after sufficient discovery of the facts in this case, dismissal of this sole remaining cause of action on the ground of absolute prosecutorial immunity may be appropriate.

**B.**     **Whether the Court Should Give Plaintiff an Opportunity to File an Amended Complaint Before Dismissing This Action**

Generally, when a district court dismisses a *pro se* action, the plaintiff will be allowed to amend his action.  *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999).  To be sure, as explained above in Part I.A. of this Decision and Order, this Court does not afford Plaintiff the special solicitude typically afforded to *pro se* plaintiffs because, as Plaintiff admits, his Complaint is submitted by an attorney.

In any event, an opportunity to amend is not required where, as here, the defects in the

---

[13]     Of course, Defendants are free to seek an order from the magistrate judge narrowing the scope of discovery to address this issue, and/or to fie a motion for summary judgment before this Court upon completion of sufficient discovery.

plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile.  As the Second Circuit has explained, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (citations omitted), *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (denial not abuse of discretion where amendment would be futile); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it.  Repleading would thus be futile.") (citation omitted); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (citation omitted).

Moreover, this rule applies even to *pro se* plaintiffs.  *See, e.g., Cuoco*, 222 F.3d at 103; *Brown*, 1997 WL 599355, at *1.  While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed. R. Civ. P. 8; rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed. R. Civ. P. 8 are procedural rules that even *pro se* civil rights plaintiffs must follow.

For these reasons, Plaintiff will not be given leave to amend his Complaint.  Plaintiff's claims, other than the surviving claim for malicious prosecution against Defendants Carnright, Weishaput and the County, are denied with prejudice.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 9) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that Defendants' motion to dismiss Plaintiff's §1983 and New York common law claim of malicious prosecution against Defendants Carnright and Weishaput; and Defendants' motion to dismiss Plaintiff's New York common law claim of malicious prosecution against the County of Ulster under the doctrine of respondeat superior are **DENIED**; and it is further

**ORDERED** that Defendants' motion to dismiss the remainder of Plaintiff's claims is **GRANTED**, and those claims are **DISMISSED** with prejudice.  The clerk is directed to terminate this case against Defendants Ulster County Sheriff's Department, Ulster County District Attorney's Office, Ronald L. Dreiser, and Wallace Fulford; and it is further

**ORDERED** that Defendants Carnright and Weishaput shall file and serve an answer to Plaintiff's complaint pursuant to F.R.C.P. Rule 12(a)(4).  This matter is referred back to Magistrate Hummel for a Rule 16 conference.

Dated: January 24, 2013
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge

33